UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PYRAMID FINANCIAL CORP, a California Corporation, and JOHN HSU, an individual,<br><br>Plaintiffs,<br>v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., dba FINRA, a Delaware Corporation and Non-Governmental Organization,<br><br>Defendant. | Case No.: 10-CV-03797-LHK<br><br>ORDER DENYING TEMPORARY RESTRAINING ORDER AND DISMISSING CASE |

On August 26, 2010, Plaintiffs Pyramid Financial Corp. and John Hsu filed an application for a Temporary Restraining Order against Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"). Having considered the parties' arguments and submissions, and for the reasons set forth below, the Court denies Plaintiffs' application for a TRO for lack of subject matter jurisdiction.

**I. Background**

Plaintiff Pyramid Financial Corp. ("Pyramid") is a deep discount brokerage firm, of which Plaintiff John Hsu is the president and CEO. Defendant FINRA is a self-regulatory organization (SRO) responsible for enforcing compliance by its members with the Securities Exchange Act,

with authority delegated by the Securities and Exchange Commission (SEC). *See Karsner v. Lothian*, 532 F.3d 876, 880 (D.C. Cir. 2008) (describing FINRA); 15 U.S.C. § 78o-3(b)(7). Pyramid is a member of FINRA and thus subject to its rules, as well as the Securities Exchange Act and SEC regulations.

On August 16, 2010, Plaintiffs received notice of an award issued against them in a FINRA arbitration. The notice of the arbitration award referred to FINRA Rule 12904, which states that "[a]ll monetary awards shall be paid within 30 days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction." FINRA Rule 12904(j). Based on this rule, Hsu believed that he had a 30-day "grace period" to raise the capital necessary to satisfy the award or to file a motion to vacate in the appropriate court. Appl. for TRO at 2-3.

FINRA alleges that the amount owed by Pyramid under the arbitration award placed Pyramid out of compliance with the Net Capital Rule, an SEC regulation that requires every securities broker to maintain a certain amount of net capital at all times. 17 C.F.R. § 15c3-1. Accordingly, FINRA requested that Pyramid provide financial documentation to establish its level of capitalization, first by phone request on August 23, 2010, and then by personal appearance at Pyramid's offices on August 24, 2010. After inspecting the information provided by Pyramid, FINRA agents personally delivered Plaintiff Hsu with a letter notifying him that Pyramid had not demonstrated compliance with the Net Capital Rule and advising Hsu that "a firm out of a compliance with the Net Capital Rule is required by the terms of the rule to cease conducting a securities business." Letter to John Hsu from Thomas Mellet (Aug. 24, 2010), attached to Decl. of John Hsu in Supp. of Pl.'s Appl. for a TRO. The letter further advised Hsu of Pyramid's responsibility to send notice to the SEC and to FINRA of its apparent noncompliance and stated that such notice could also specify Pyramid's reasons for disagreement with FINRA. *Id.*

On the evening of August 24, 2010, counsel for Pyramid notified FINRA by voicemail and fax of its intent to request a temporary restraining order against FINRA's actions. On August 26, 2010, Pyramid filed its application for a TRO with this Court, and on the same day counsel for Plaintiffs and FINRA appeared before the Court for argument. Plaintiffs seek to enjoin FINRA

2
Case No.: 10-CV-03797-LHK
ORDER DENYING TEMPORARY RESTRAINING ORDER AND DISMISSING CASE

from effectively "shut[ting] Pyramid down" by enforcing the Net Capital Rule during the 30 days Pyramid has to satisfy the arbitration award. They contend that the Net Capital Rule conflicts with the 30-day "grace period" established by Rule 12904 and that enforcement of the Net Capital Rule would constitute a breach of contract by FINRA, since it would constitute a violation of Rule 12904. Plaintiffs further contend that permitting FINRA to enforce the Net Capital Rule during the 30-day period would cause Pyramid immediate and irreparable harm by causing its investors to withdraw and thereby depriving Pyramid of its sole asset, its client base. FINRA rules provide for a 10-day stay of the effectiveness of the notice of noncompliance with the Net Capital Rule, FINRA Rule 9559(c)(2), and the Securities Exchange Act further provides for review of FINRA decisions by the SEC, 15 U.S.C. § 78s(d)(1)-(2). However, Plaintiffs have not requested a stay under FINRA rules or pursued administrative remedies.

II. **Discussion**

    a. **Exhaustion Doctrine**

The Securities and Exchange Act vests exclusive jurisdiction over violations of securities laws and regulations, and suits to enforce any liability or duty under those laws and regulations, in the federal district courts. 15 U.S.C. § 78aa; *Sparta Surgical Corp. v. Nat'l Assoc. of Securities Dealers*, 159 F.3d 1209, 1211-1212 (9th Cir. 1998). Despite this general grant of jurisdiction, Defendant FINRA argues that this Court lacks proper jurisdiction over this suit because Plaintiffs have failed to exhaust administrative remedies.

The Ninth Circuit has not considered whether a plaintiff member of a self-regulatory organization (SRO) must exhaust administrative remedies before bringing claims against the SRO for improper enforcement action in federal court. This District has considered the question, however, and joined other circuits in concluding that the doctrine of exhaustion of administrative remedies should be applied to prevent circumvention of the review procedures provided by the SEC. *Alton v. Nat'l Assoc. of Securities Dealers*, No. C-94-0618, 1994 U.S. Dist. LEXIS 11312, at *5 (N.D.Cal. July 26, 1994). *See also PennMont Securities v. Frucher*, 586 F.3d 242, 246 (3d Cir. 2009) (citing *First Jersey Secs., Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979)); *Swirsky v.*

3

Case No.: 10-CV-03797-LHK
ORDER DENYING TEMPORARY RESTRAINING ORDER AND DISMISSING CASE

*National Ass'n of Securities Dealers*, 124 F.3d 59, 62 (1st Cir. 1997); *Merrill Lynch v. NASD*, 616 F.2d 1363, 1370 (5th Cir. 1980).

As noted in *Alton*, it is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." 1994 U.S. Dist. LEXIS 11312, at *5-6 (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)). Although the statute governing FINRA does not explicitly require exhaustion of administrative remedies, it does set out a comprehensive system of administrative review. In accordance with the statutory requirements, *see* 15 U.S.C. § 78o-3(h), FINRA itself provides procedures for challenging its enforcement actions, including procedures for requesting a letter of withdrawal of a notice of noncompliance with the Net Capital Rule and for obtaining a hearing. *See* FINRA Rules 9557, 9559. Final rulings by FINRA are subject to administrative review by the SEC, 15 U.S.C. § 78s(d)(1)-(2), and SEC rulings, in turn, are subject to review in the federal courts of appeals. 15 U.S.C. § 78y. The comprehensiveness of this review procedure has led courts to conclude that the doctrine of exhaustion of remedies should apply to cases, like this one, that challenge SRO enforcement actions. *See Swirsky*, 124 F.3d at 62 (collecting cases).

The Supreme Court recently held that the procedures for administrative appeals and judicial review set forth in Title 15 do not strip district courts of jurisdiction in all cases involving the enforcement actions of entities to which the SEC has delegated authority. *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 130 S.Ct. 3138, 3150-51 (2010) ("*PCAOB*") (upholding jurisdiction in the district court over an action seeking to enjoin PCAOB from exercising its enforcement authority). In *PCAOB*, however, the Court dealt with constitutional claims that were "outside the Commission's competence and expertise," *id.* at 3151, and not "of the type Congress intended to be reviewed within th[e] statutory structure." *Id.* at 3150 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994)). Indeed, the Supreme Court noted that "[g]enerally, when Congress creates procedures 'designed to permit agency expertise to be brought to bear on particular problems,' those procedures 'are to be exclusive.'" *Id.* (quoting *Whitney Nat. Bank in*

*Jefferson Parish v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 420 (1965)). In this case, Plaintiffs challenge actions squarely within the Commission's competence and expertise: the application of the Net Capital Rule to securities brokers. The procedures for administrative review in Title 15 are designed to bring agency expertise to bear on this issue, and those procedures are therefore exclusive. Plaintiffs must exhaust their claims before FINRA and the SEC before seeking review in the federal courts.

### b. Exceptions to the Exhaustion Doctrine

There are several exceptions to exhaustion doctrine that allow a district court to hear a case before administrative proceedings have been completed. A district court may have jurisdiction when 1) the available administrative procedure is clearly shown to be inadequate to prevent irreparable injury, or 2) there is a clear and unambiguous statutory or constitutional violation. *Alton*, 1994 U.S. Dist. LEXIS 11312, at *7 (citing *First Jersey*, 605 F.2d at 696).

Plaintiffs argue that they will suffer irreparable harm if this Court does not grant a TRO. They assert that if FINRA is not enjoined from enforcing the Net Capital Rule, they will be required to cease most of their operations, Pyramid will lose large numbers of clients, and it will be forced to close for good. Appl. for TRO at 4. Yet Plaintiffs concede that even if a TRO is granted, they will likely be forced to close their business by September 16 to satisfy the arbitration award, and that a TRO will merely enable them to delay closure, maintain a larger client base, and obtain a higher price when the business is sold. Courts have held that SRO action likely to result in termination of a business cannot constitute irreparable harm. *PennMont Securities*, 586 F.3d at 246 ("claims of corporate financial collapse cannot satisfy the irreparable harm exception, given that financial harm can occur in many, if not most, disciplinary hearings of securities traders"). Thus, plaintiffs' claim that denial of a TRO will merely cause more rapid termination of the business and a reduced sale price certainly does not constitute irreparable harm.

Nor is there a clear and unambiguous statutory violation in this case. The SEC regulation setting forth the net capital requirements unambiguously states that "[e]very broker or dealer shall *at all times* have and maintain net capital" in the amounts specified by the SEC. 17 C.F.R. §

5

Case No.: 10-CV-03797-LHK
ORDER DENYING TEMPORARY RESTRAINING ORDER AND DISMISSING CASE

240.15c3-1(a) (emphasis added).  The regulation lists a number of exemptions, *id*. at § 240.15(b), but an exemption for a period following an arbitration award is not among them.  Moreover, although Plaintiffs read FINRA Rule 12904(j) as a "grace period," it is far from clear that the Rule is actually intended to provide a safe harbor for businesses against which an award has been imposed.  Rather, the Rule simply imposes a deadline for payment and establishes the circumstances under which an award will bear interest.  There is nothing to indicate that FINRA may not enforce the net capital requirement during the 30-day post-award period, and indeed, it appears that FINRA is required to enforce it under SEC regulations.

### III. **Conclusion**

Plaintiffs have neither exhausted administrative remedies nor demonstrated an exception to the exhaustion doctrine.  This Court therefore lacks jurisdiction over the action.  Accordingly, the Court denies Plaintiffs' application for a temporary restraining order, and the case is dismissed without prejudice.

**IT IS SO ORDERED.**

Dated: August 27, 2010

_____
LUCY H. KOH
United States District Judge

6

Case No.: 10-CV-03797-LHK
ORDER DENYING TEMPORARY RESTRAINING ORDER AND DISMISSING CASE